IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
NO. 3:17-CR-349

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| FAUSTO ANTONIO LOPEZ | ) |
| | ) |

**MEMORANDUM IN AID OF SENTENCING**

Fausto Lopez, through counsel, submits this Sentencing Memorandum for the Court's consideration. This Memorandum requests a sentence of 120 months. Mr. Lopez faces an exceptionally long sentence that cannot go below the mandatory minimum that applies in this case. His personal history, his somewhat limited criminal history, and his efforts to provide useful information to law enforcement despite significant risk to his family warrant a variant sentence than that called for by the guidelines in order to comply with 18 U.S.C. 3553. Mr. Lopez requests that this Court fashion an individualized sentence that gives appropriate weight and effect to all of the 3553 factors.

**THE GUIDELINE RANGE**

Undersigned counsel filed an objection to the Guideline range calculated in the Presentence Report, specifically, that a two-level leadership role pursuant to USSG

§3B1.1(c) does not apply.

The basis of the supervisory role, according to the PSR, is that Mr. Lopez dispatched "his cousin", co-defendant Millan-Leon to deliver methamphetamine to the confidential informant on his behalf. (See PSR, paragraph 15). During recorded phone calls with the confidential informant, Mr. Lopez implies that he controls his "cousin" who he will direct to complete the transaction. In truth and fact, Mr. Lopez had never met Millan-Leon, had no relationship with him, had never spoken to him and did not direct him, nor did Lopez use a third party to direct him. Mr. Lopez reported the confidential informant's request for Methamphetamine to an unindicted co-conspirator who then arranged for Millan-Leon to deliver the methamphetamine to the confidential informant.

In order to qualify for the role enhancement, the government must present evidence that the defendant managed or supervised "participants, as opposed to property, in the criminal enterprise." *United States v. Slade*, 631 F.3d 185, 190 n.1 (4th Cir. 2011); (observing that the Sentencing Commission clarified that the enhancement applies only to defendants who organize, lead, manage, or supervise "'one or more other participants' and not to those who just 'exercise management responsibility over the property, assets, or activities of a criminal organization'") (quoting U.S.S.G. § 3B1.1 cmt. n.2). *United States v. Steffen*, 741 F.3d 411, 415, (4th Cir. 2013).

In the cases in which this Court has affirmed the application of the leadership

enhancement, there was evidence that the defendants actually exercised authority over the other participants in the operation or actively directed its activities. See, e.g., *United States v. Jones*, 356 F.3d 529, 538 (4th Cir. 2004), cert. denied, 541 U.S. 952, 124 S. Ct. 1694, 158 L. Ed. 2d 384 (2004) (defendant recruited dealers, controlled the allocation of drugs to dealers, determined how the profits were divided, and handled the logistics and arrangements for the transactions); *United States v. Perkins*, 108 F.3d 512, 518 (4th Cir. 1997) (defendant "directed the activities of other members [**16] of the drug ring and facilitated the criminal enterprise by renting apartments, acquiring pagers, hiring a lawyer for a codefendant, and paying for the bond of another codefendant"). *United States v. Cameron*, 573 F.3d 179, 185, (4th Cir. 2009).

In determining a defendant's "leadership and organizational role," courts [**12] must consider seven factors: [1] the exercise of decision making authority, [2] the nature of participation in the commission of the offense, [3] the recruitment of accomplices, [4] the claimed right to a larger share of the fruits of the crime, [5] the degree of participation in planning or organizing the offense, [6] the nature and scope of the illegal activity, and [7] the degree of control and authority exercised over others. *U.S.S.G. § 3B1.1*, cmt. n.4; see also *United States v. Sayles*, 296 F.3d 219, 224 (4th Cir. 2002) (discussing the seven-factor test).

The case law requires actual authority rather than what we have in this case, which is merely Mr. Lopez' misrepresented authority. No evidence suggests that Mr.

Lopez was involved in decision making authority, the recruitment of others to participate in the crime, that he received a larger share of the proceeds, or that he actually controlled anyone. To the contrary, Mr. Lopez was responsible for taking an order from the confidential informant, he controlled no individuals, the evidence in the case indicates that he had no connection to Millan-Leon and that Millan Leon was ordered and directed by others.

A management enhancement should not be applied. Therefore, the appropriate guideline range is an offense level 33 which would result in a guideline range of 151-188.

## RELEVANT FACTUAL BACKGROUND

A. **Personal History of Mr. Lopez**

Mr. Lopez is a thirty one year old father of two children ages 11 and 4. Mr. Lopez grew up in significant poverty moving around in California and the southwest. He dropped out of school in ninth grade to be able to help make money for his family. He worked in fields picking produce and later became a laborer, then working as a maintenance man in the apartment complex where his family lived. Most recently, he worked as a painter earning $11/ hour. A former co-worker, Pablo Corrales wrote to this Court on behalf of Mr. Lopez saying, "[w]e treated him as a coworker and a good friend. As a coworker, he was always very hardworking, punctual, respectful, and helpful. As a friend, he was always there to be of service with a smile on his face,

supportive and attentive. Always looking after his family to make them a part of every event or gathering we organized." See Exhibit A: Letter from Pablo Corrales.

Mr. Lopez reported to probation and that he is close to his family and that is supported by the letters that are attached as Exhibit A.

Mr. Lopez has one criminal conviction for a recent assault charge where he was sentenced to probation. He has no other convictions and has not spent any time in prison.

Since his arrest, Mr. Lopez has completed every available class at the Mecklenburg County Jail to improve himself. Mr. Lopez has also been debriefed and has provided all information known to him concerning criminal activity. He has done so despite significant concern for his personal well-being and his family's safety. To date, his information has not substantially assisted the Government, however, this risk for personal safety signifies his desire to reform his life and break ties with those in the criminal community.

**B. Offense History**

The Presentence Report lays out an accurate summary of the conduct related to Mr. Lopez' involvement in the instant case.

**APPLICATION OF 18 U.S.C. §3553**

1. *The Need to Avoid Unwarranted Sentencing Disparities*

A guideline sentence is disparate from the sentence received by Mr. Millan-Leon, Mr. Lopez' co-defendant. Mr. Mr. Millan-Leon's offense conduct involved delivering the ten kilos of methamphetamine to the confidential informant that had been ordered through Mr Lopez. Admittedly, Mr. Lopez had previously ordered 873 grams of methamphetamine for the confidential informant that Mr. Millan-Leon did not play a role in. Mr. Millan-Leon did not provide any assistance to the Government.

Mr. Millan-Leon was sentenced to a period of 30 months followed by 2 years supervised release. This disparity in guideline sentence and actual sentence of Mr. Leon, is more than a decade of time.

18 U.S.C. §3553(a)(6) states that the Court must consider, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct". *18 USC § 3553.*

Admittedly, Mr. Lopez has one prior conviction for which he received probation1, however, the guideline sentence proscribed to Mr. Lopez is 403% greater than the sentence imposed on Mr. Millan-Leon. This significant disparity should be remedied by a variant sentence.

2. *Impact of Increase to Sentence due to Probationary Status is Unduly Harsh.*

Mr. Lopez has one prior conviction for which he was placed on probation. Because Mr. Lopez was on probation at the time of this offense he received two

additional criminal history points moving him into criminal history category of II, and therefore denying him the ability to be eligible for a two level safety- valve guideline decrease, pursuant to U.S.S.G.§ 5C1.2, which would have also exempted him from the mandatory minimum sentence.

Had Mr. Lopez not received an enhancement for being on probation, he would face no mandatory minimum sentence and his guideline range would have been 108-135 months. Said another way, because Mr. Lopez committed this offense on probation, his guidelines subject him to 43 additional months, a sentence that is 39% more than had he completed his probation.

3. *10:1 ratio of Meth "actual" is unduly harsh and not justified in determining the seriousness of the offense.*

In note (D) to U.S.S.G 2D1.1, meth "actual" or "Ice" is defined "for the purposes of this guideline, means a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity." In a 2016 DEA Intelligence Report attached hereto as Exhibit B, the average purity of meth between 2012 and 2016 was always above 80% and increased in 2016 to an average of 94% purity.

The Guideline applications for "Ice" or meth "actual" increase penalties ten times for meth that is deemed to exceed 80% purity, or more appropriately, the penalties are

---

1 It should be noted that Mr. Lopez also engaged in a prior transaction with the confidential informant for 873 grams

increased in the cases where the purity is tested. This increase bears no relation to Mr. Lopez' sophistication or criminality. This increase is arbitrary. Specifically, Mr. Lopez' guidelines increase two levels (or 30 months) because 873 grams of meth he caused to be sent had been tested by the crime lab and deemed pure.

Courts have varied downward in similar cases: In *United States v. Nawanna*, 2018 U.S. Dist. LEXIS 72676, 2018 WL 2021350, the Court found that purity of methamphetamine is no longer an indicator of increased role in the offense. Other Courts have similarly varied downward from the guidelines: *United States v. Hartle*, 2017 U.S. Dist. LEXIS 93367, 2017 WL 2608221; see also 2017 U.S. Dist. LEXIS 93367, [WL] at *2 (noting increases in purity levels of methamphetamine over time in the District of Idaho and nationwide). The Court in Nawanna states, "To put it a different way, I agree with the assessment by Judge Robert C. Brack of the District of New Mexico that "the Commission's assumption regarding the connection between methamphetamine purity and criminal role is divorced from reality." *Ibarra-Sandoval*, 265 F. Supp. 3d at 1255. As Nawanna correctly observes, because of the generally very high purity of methamphetamine available today at all levels of the distribution chain, virtually all defendants today face enhanced punishment for a factor present in virtually all methamphetamine cases, not enhanced punishment based on individualized determinations, making the Guidelines purity enhancement excessive. Cf. *Hayes*, 948 F.

---

of meth. This methamphetamine was returned from the crime lab as meth "actual', yielding guidelines of ten times

Supp. 2d at 1027-29. Moreover, because the purity-based methamphetamine Guidelines improperly punish virtually all defendants for their assumed role in the offense, *Nawanna* argues they result in a sort of "double counting" when a defendant is further enhanced for his or her actual role in the offense pursuant to U.S.S.G. § 3B1.1(b). *United States v. Nawanna*, 2018 U.S. Dist. LEXIS 72676, *23, 2018 WL 2021350.

This lack of justification of fact based rationale in what could incarcerate Mr. Lopez for two and a half additional years in custody for the portion of the drug calculation deemed pure should be considered in determining the appropriate sentence in this case.

## CONCLUSION

For the foregoing reasons, the defense, on behalf of Mr. Lopez, respectfully requests that this Court impose a variant sentence of 120 months.

This the 27th day of September, 2018.

Respectfully submitted,

/s/ C. Melissa Owen
C. Melissa Owen
Bar No. 28903
Attorney for Mr. Lopez
Tin Fulton Walker & Owen, PLLC
301 East Park Ave.
Charlotte, NC 28203
Phone: 704-338-1220
Fax: 704-338-1312

---

those of meth that either has not be deemed meth "actual" or that has not been tested for purity.

E-mail: cmowen@tinfulton.com

CERTIFICATE OF SERVICE

The undersigned hereby certifies that s/he has served the foregoing pleading with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel for defendants:

Steven Kaufman
Steven.kaufman@usdoj.gov

This the 27th day of September, 2018.

/s/ C. Melissa Owen

C. Melissa Owen